# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTHONY V. CORDOVA,**

        **Plaintiff,**

    v.                                          Case No. 19-CV-223

**BRIAN FOSTER, *ET AL.*,**

        **Defendants.**

## ORDER

Plaintiff Anthony V. Cordova is a Wisconsin state prisoner who is representing himself. He filed a complaint under 42 U.S.C. § 1983 alleging that his constitutional rights have been violated while in custody at Waupun Correctional Institution. Cordova also filed a motion for leave to proceed without prepaying the filing fee and a motion to appoint counsel. The court has jurisdiction to resolve Cordova's motions and to screen the complaint based on the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. *Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those

requirements is that they pay an initial partial filing fee. On February 25, 2019, the court ordered Cordova to pay an initial partial filing fee of $1.37. Cordova paid that fee on March 18, 2019. Accordingly, the court will grant Cordova's motion to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time as explained in this order.

2. *Screening of the Complaint*

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

2.1 The Complaint's Allegations

At around 11:30 a.m. on August 29, 2018, Cordova stopped defendant C. Berkhurst, who was passing out medication in segregation, to tell Berkhurst that he needed to see a psychologist. Cordova told Berkhurst he was experiencing suicidal thoughts. Berkhurst just smiled and pushed the medication cart past Cordova's cell. About an hour later, at 12:30 p.m., Cordova pressed the emergency button in his cell. He told the male who responded that he was going to hurt himself. The male responded, "OK, just a minute." (ECF No. 1 at 11.) Cordova heard nothing back. An hour later, at around 1:30 p.m., Cordova pressed his emergency button again and told the male who answered that he was suicidal and needed to speak to a psychologist. The male laughed and told Cordova, "your [sic] not going to do anything." (*Id.* at 12.)

Around 2:10 p.m., Cordova told defendant Theander, the second shift supervisor assigned to his cell range, that he was going to hurt himself—specifically, that he was going to roll up his mattress, tie his sheets around it, jam it between the wall and the toilet, put the sheet over the sink, and hang himself. The officer (presumably Theander) radioed for assistance. Once officers arrived, Cordova told them that he needed to be cuffed in the front due to a shoulder injury. The officers asked if he had a Health Services Unit (HSU) restriction. Cordova told them

3

he did not. The officers then opened the food tray door and ordered Cordova to put his hands behind his back and through the food tray door. This caused him great pain, so he pulled his hands back into his cell. The officers told him that, if he failed to comply, they would pepper spray him. To avoid being pepper sprayed, Cordova complied.

The door to Cordova's cell then opened and officers told him to kneel so that they could put shackles on his ankles. Although Cordova told the officers that he was in "extreme pain," they ignored him. After Cordova stood back up, the officers walked him to the strip search cell, where he was again told to kneel. The pain in his shoulder was so bad that he wet his pants and almost lost consciousness. He was stripped of all of his clothing and searched. At 3:00 p.m., Cordova spoke with defendant Dr. Gayle E. Griffith. He told Dr. Griffith about his suicidal thoughts, and she placed him in psychiatric observation. Dr. Griffith refused to speak to him after she made her decision to place him in observation, even though Cordova called to her from fifteen feet away.

When Cordova arrived at his cell, he was made to kneel again and was in extreme pain. He was given a canvas skirt to wear and nothing else. He did not receive footwear, socks, a mattress, or a blanket. Cordova had to sleep on a hard rubber mat that resembles tire rubber. Defendant C.O. II Pohl refused to give Cordova a food tray on August 29, 2018, because Cordova would not kneel down at the back of his cell. For the same reason, Pohl again refused to give Cordova a food tray during first shift the next day. On August 31, 2018, defendants Lewin and

4

Erdman refused to give Cordova a tray during first and second shifts, again because Cordova would not kneel at the back of his cell. Cordova did not receive food for three days.

Between August 29 and August 31, 2018, Cordova did not receive any toilet paper because he would not comply with going to the back of his cell and kneeling with his hands on the wall. He had to use toilet water and splash it on himself and use his hand to clean himself.

On September 1, 2018, Cordova was so hungry that he submitted and went to the back of the cell, knelt down, and put his hands on the wall. After an officer put the food tray in his cell, "one of the defendants" said they knew he would "come around." (*Id.* at 17.) Cordova did not receive a spoon and had to eat his food with his dirty hand because his right shoulder was still in pain. Cordova says his shoulder was still "frozen" as of February 1, 2019.

Defendant Captain Tritt implemented the back of cell policy because an inmate who is a threat to himself is potentially a threat to staff as well. Defendants Brian Foster, the warden at Waupun, and Tony Meli, the security director, let Tritt implement "these illegal policies." (Cordova seems to be referencing more than the back of cell policy.) Defendant Hasworth's job is to promulgate policies for the segregation unit.

During his time in observation, Cordova also developed blisters on his feet that burst and bled. He alleges that there was a lot of blood on the cell floor. When

an officer noticed it and called defendant Tritt, Cordova explained where the blood came from. Tritt just walked away.

Because there are cameras in the cells, officers could observe Cordova sitting on the toilet. At no time did any of the defendants call for a nurse to look at his foot or to examine his shoulder. Cordova alleges that he was being punished, degraded, and humiliated by being forced to wear a canvas skirt and by being forced to kneel down at the back of his cell with his hands on the wall. He further alleges that he is (as of February 1, 2019) in punitive segregation as an alternative to providing him with mental health care. The defendants, he says, did not take his mental illness into account when they wrote him conduct reports for actions and behavior caused by his mental illness.

Cordova has made numerous requests to be hospitalized or transferred to a facility where he can be treated for his mental illness. Dr. McCallister and Dr. Griffith, as well as defendant Dr. Torria VanBuren, have refused his requests. Cordova previously has been taken to the hospital for trying to kill himself, as well as for trying to kill his cellmate. Because of his mental illness, he can only remain in the general population for short periods of time.

Defendants Dr. McCallister and Dr. McLaren have both written Cordova incident reports because he expressed to them that he was hearing voices coming from the vents, telling him to kill himself. On February 1, 2019, Dr. McCallister told Cordova she could only see him once every three months. Dr. McCallister would not prescribe psychotropic medication to help control Cordova's mental illness. Cordova

told Dr. McCallister that it is only a matter of time before he kills a fellow inmate. Dr. McCallister told him that she would have to file an incident report.

2.2 Analysis

Cordova's complaint raises numerous claims against numerous defendants, including defendants he has not identified in the caption of his complaint.

Cordova first states a claim against several defendants under the Eighth Amendment for deliberate indifference to a serious medical need. To state a claim of deliberate indifference to a serious medical need, a plaintiff must allege that: (1) he suffered from an objectively serious medical condition; and (2) the defendants were deliberately indifferent to a risk of serious harm from that condition. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). In cases involving suicide, the subjective component requires a plaintiff to allege that the defendant: "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006).

Suicide is undoubtedly a "serious medical condition." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014), and "treatment of a psychiatric or psychological condition may present a 'serious medical need,'" *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). The court finds that Cordova has sufficiently alleged that he suffers from an objectively serious medical condition. Cordova states a claim against Berkhurst (who he told about his suicidal thoughts and who he asked to see a psychologist) for being deliberately indifferent to his serious medical needs. Cordova's allegations that

7

Berkhurst smiled and walked away after Cordova told him he was suicidal sufficiently alleges that Berkhurst was deliberately indifferent to a risk of serious harm from that condition. Thus, the court will allow Cordova to proceed with a claim for deliberate indifference against Berkhurst.

The court will also allow him to proceed against the two officers who answered him when he pressed his emergency call button at 12:30 and 1:30 p.m. on August 29, 2018. Cordova does not name these defendants in the body of his complaint, and the court's review of the exhibits attached to his complaint did not result in identifying these officers. For now, the court will refer to the two officers as John Doe 1 and John Doe 2. See *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555–56 (7th Cir. 1996) (noting that courts are charged with assisting pro se litigants who state allegations against individuals not necessarily named in the caption of their pro se complaint). Cordova will be able to conduct discovery to identify the names of the John Does after the known defendants file an answer. If he already knows the John Doe defendants' names, he may file a motion to substitute their names before discovery begins.

Cordova also states an Eighth Amendment claim against Dr. McCallister, Dr. Griffith, and Dr. VanBuren. He alleges that he asked each of them to be hospitalized or transferred. While the Eighth Amendment does not entitle prisoners to "demand specific care" or "the best care possible," it does entitle them to "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). At screening, Cordova's allegations of mental

8

illness (a serious medical need) and lack of adequate care are sufficient. Given his past behavior (including attempting to kill a cellmate) and his allegations about his current mental state, the court will allow him to proceed on a claim against Drs. McCallister, Griffith, and VanBuren. He may also proceed against Dr. McCallister for not prescribing him medication to control his mental illness.

Cordova also sufficiently states a claim under the Eighth Amendment against Tritt based on his allegations that Tritt saw blood on Cordova's cell floor, asked what happened, and then did nothing about it. An Eighth Amendment claim has two components—objective and subjective. To satisfy the objective component, the alleged deprivation "must be, objectively, 'sufficiently serious.'" *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir.1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires a plaintiff to show that the defendant acted with a purposeful state of mind. *Id.* Cordova alleges that blisters on his feet burst, getting blood all over the floor. Tritt knew this and took no steps to remedy the problem. At screening, this is sufficient.

Finally, Cordova sufficiently states a claim against the officers who restrained his hands behind his back despite his protests that his shoulder injury caused him pain. Although he repeatedly told the officers that he was in pain, the officers nevertheless cuffed him behind the back. His pain was so severe that, at one point, he wet his pants. Given his alleged pain level and the officers' alleged refusal to do anything to address or alleviate that pain, Cordova states an Eighth Amendment claim against them. As with his claim concerning the call button,

9

Cordova has not identified the officers. The court will list them as John Doe 3 and John Doe 4. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555–56 (7th Cir. 1996). The court reminds Cordova that he will be able to find out the Does' names during discovery after the named defendants file an answer.

The remainder of Cordova's complaint does not state a claim. His allegations about the lack of food and toilet paper were a result of his failure to comply with the requirement that he kneel at the back of his cell with his hands against the wall. The court will not allow him to proceed on such claims when his decision to not comply with a policy are the reason he went without food and toilet paper for several days. *See Freeman v. Berge*, 441 F.3d 543, 544–45 (7th Cir. 2006).

With respect to the other conditions, such as not having a blanket or sheet, being provided a rubber mattress, and having only a suicide skirt to wear, the court notes that Cordova was on psychiatric observation for threatening to kill himself. The conditions were in response to his threatened self-harm. And, furthermore, Cordova does not allege that he told anyone that he objected to any of the conditions and that he was suffering as a result. A claim based on conditions of confinement requires not only that the conditions be extreme deprivations, *Turner v. Miller*, 301 F.3d 470, 472 (7th Cir. 2001), but that the defendant was deliberately indifferent to the risk created by those conditions, *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The official must have actually known about the risk of harm. *Pierson v. Hartley*, 392 F.3d 898, 902 (7th Cir. 2004). Without allegations that any of the defendants acted with the subject intent to disregard risk of harm to him, Cordova has failed to state

10

a claim based on these conditions (except against Tritt based on his bloody feet and cell, against whom he is already proceeding).

The court notes that Cordova attempts to fashion his allegations about having to go to the back of his cell before food would be delivered into a policy claim. He says that Tritt implemented the back of cell policy and that defendants Brian Foster and Tony Meli let Tritt do so. But it is not clear what constitutional rights Cordova claims were violated. Cordova argues that the back of cell practice is punishment, that it is degrading and humiliating, and that he should not have to comply with it. The exhibits to his complaint also show this is his contention—he submitted numerous information requests about who implemented the policy. Tritt has stated that the policy ensures that inmates who are a threat to themselves do not become threats to prison staff, and Cordova has a history of violence (he tried to kill his cellmate in 2017, for example). The court cannot infer any constitutional violation based on Cordova's protests against the back of cell policy. The back of cell policy may be humiliating and degrading, but that does not make it unconstitutional.

Cordova also makes an argument that the way prison officials handle inmates with mental illness—and address behavior that results from mental illness—violates the Wisconsin Administrative Code. For example, he states that officials did not take his mental illness into account when issuing conduct reports, which he contends violates the Administrative Code. But the violation of an administrative rule cannot form the basis of a private right of action unless there is

"a clear indication of the [drafter's] intent to create such a right," *Grube v. Daun*, 210 Wis. 2d 681, 689 (1997), which Chapter 306 (the DOC chapter) does not, *see* Wis. Admin Code § DOC 306.01. To the extent Cordova is arguing that the violation of an administrative rule violates his constitutional rights, a violation of state laws or regulations is not a basis for a federal civil rights lawsuit. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). Cordova is already proceeding on claims against Dr. McCallister, Dr. Griffith, and Dr. VanBuren about the quality of his mental health care. To the extent he is alleging that a violation of the administrative code violated his constitutional rights, the nature of the care he received is already in issue. Not following the administrative code may be relevant in proving his claims, but it is not a claim on its own.

In sum, the court is allowing Cordova to proceed on Eighth Amendment claims against Berkhurst, Dr. McCallister, Dr. VanBuren, Dr. Griffith, and Tritt, as well as John Does 1 and 2 (relating to the emergency call button) and John Does 3 and 4 (relating to being cuffed with his hands behind his back). The remaining defendants are dismissed from the lawsuit because Cordova does not sufficiently state a claim against them for violating his constitutional rights.

3. *Motion to Appoint Counsel*

Cordova has also requested that the court appoint him counsel. The court has discretion to recruit counsel to represent a litigant who is unable to afford one in a civil case. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir.

2013). Once a plaintiff demonstrates he has made a reasonable attempt to secure counsel on his own, the court examines "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). This inquiry focuses not only on a plaintiff's ability to try his case, but also includes other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id*.

Cordova has not made the preliminary showing that he tried to find an attorney on his own, so the court will deny his motion for that reason. Even if Cordova had tried to find an attorney himself, the court would deny his motion at this early point in the case. At this time, there is nothing for Cordova to do but wait for the defendants to answer his complaint. Furthermore, many of his concerns—such as help with questioning witnesses or how statutes will affect damages—are premature. The court denies his motion without prejudice.

*4. Conclusion*

**THEREFORE, IT IS ORDERED** that Cordova's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Cordova's motion for the appointment of counsel (ECF No. 3) is **DENIED WITHOUT PREJUDICE**.

**IT IS ALSO ORDERED** that defendants Brian Foster, Tony Meli, Captain Theander, C.O. Pohl, C.O. II Lewin, are C.O. II Erdman are **DISMISSED**.

**IT IS ALSO ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Cordova's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Berkhurst, Dr. McCallister, Dr. VanBuren, Dr. Griffith, and Tritt.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a pleading responsive to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties shall not engage in discovery until the court enters a scheduling order.

**IT IS FURTHER ORDERED** that the agency having custody of Cordova shall collect from his institution trust account the $348.63 balance of the filing fee by collecting monthly payments from Cordova's prison trust account in an amount equal to 20% of the preceding month's income credited to Cordova's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Cordova is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Cordova's remaining balance to the receiving institution.

**IT IS ALSO ORDERED** that a copy of this order be sent to the officer in charge of the agency where Cordova is confined.

**IT IS FURTHER ORDERED** that, under the Prisoner E-Filing Program, Cordova shall submit all correspondence and case filings to institution staff, who will scan and email documents to the court. If Cordova ceases to be incarcerated at a Prisoner E-Filing institution, he will be required to submit his filings to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Cordova is advised that failure to make a timely submission will result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 26th day of April, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge