# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTHONY V. CORDOVA,

    Plaintiff,

v.              Case No. 19-CV-223

KYLE TRITT, *et al.*,

    Defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  Anthony V. Cordova, a Wisconsin inmate representing himself, brings this lawsuit under 42 U.S.C. § 1983. Cordova alleges Eighth Amendment claims for deliberant indifference against the defendants. Before the court is the defendants' motion for summary judgment. They argue that Cordova did not exhaust the available administrative remedies before initiating this lawsuit.

  *1. Relevant Facts*

  As a preliminary matter, the court notes that Cordova failed to respond to the defendants' proposed findings of fact. The defendants followed the prescribed procedure for filing summary judgment against an unrepresented plaintiff, which requires them to include the relevant rules and explain that uncontradicted facts will be taken as true for purposes of deciding the motion. Civil L.R. 56(a). The court also explicitly told Cordova that his failure to respond to the defendants' proposed findings of fact would result in the court taking them as true for purposes of resolving the

motion for summary judgment. (ECF No. 25 at 4.) Despite the warnings, Cordova did not respond to the defendants' proposed findings of fact, so the court will take them as true for purposes of this motion. Civil L.R. 56(b)(4).

That said, the defendants provide only two proposed findings of fact. The first concerns the claims on which Cordova was allowed to proceed. (ECF No. 17, ¶ 1.) The court takes this information from the screening order. Cordova is proceeding on six claims that the defendants were deliberately indifferent to his serious medical needs, violating the Eighth Amendment. Cordova's first claim is against defendant C. Berkhurst for ignoring Cordova's threats of self-harm on August 29, 2018. (ECF No. 9 at 7–8.) The second is against two John Doe defendants for ignoring the threats of self-harm Cordova made over the intercom on the same day. (*Id.* at 8.) Third, Cordova is proceeding against defendants Dr. Callister, Dr. Griffith, and Dr. Van Buren for refusing his request to be transferred to a hospital or different facility. (*Id.* at 8–9.) Cordova's fourth claim is against Dr. Callister for failing to prescribe medication for his mental illness. (*Id.* at 9.) His fifth claim is against Tritt for failing to assist with his blisters (*Id.*) Finally, Cordova's sixth claim is against two additional John Doe defendants for handcuffing him behind his back on August 29, 2018. (*Id.* at 9–10.

The defendants' second, and final, proposed finding of fact is this: Cordova never filed an inmate complaint regarding any of the claims upon which he has been allowed to proceed. (ECF No. 17, ¶ 2.) The court takes this proposed finding of fact as true.

*2. Relevant Law*

Because Cordova was incarcerated when he filed his complaint, the Prisoner Litigation Reform Act (PLRA) applies to this case. Under the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). According to the Supreme Court, the exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Wis. Admin. Code § DOC 310.10 outlines the procedures by which inmate complaint examiners review and process inmate complaints.

The U.S. Supreme Court has recently confirmed that the language in § 1997e(a) requiring prisoners to exhaust the available administrative remedies is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). There is only one qualifier: the remedies must be available. *Id.* "But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* Accordingly, because the requirement to exhaust is a statutory

3

requirement, there is no judicial discretion to excuse an inmate's failure to exhaust when the administrative remedies were available to him. *Id.* at 1857.

3. *Analysis*

Cordova did not contest the defendants' proposed finding of fact that he did not file any inmate complaints about any of the claims upon which the court allowed him to proceed. The court could stop there, considering it has taken the defendants' proposed findings of fact as true. However, Cordova has filed a declaration and exhibits to try to show that he has in fact exhausted his claims. (ECF No. 32.) His declaration primarily recounts his claims. (*Id.*, ¶¶ 2–7.) He also says that he "did all he could to resolve this matter internally" and then filed an inmate complaint when nothing became of his efforts. (*Id.*, ¶ 8.) Cordova attached 38 pages of exhibits to try to show he exhausted his claims. (ECF No. 32-1.) Even assuming his declaration authenticates the documents (*see* ECF No. 32, ¶ 9), the exhibits do not show that Cordova exhausted his administrative remedies.

Many of the exhibits Cordova provided have to do with his objection to a policy that required him to go to the back of his cell, kneel, and place his hands on the wall to receive his food. (*See* ECF No. 32-1 at 2, 8, 12, 14, 20, 22, 24, 26, 28, 35.) However, the court explicitly stated in its screening order that Cordova could not proceed on a claim related to this policy. (ECF No. 9 at 11.) Other exhibits are related to events that occurred *after* this lawsuit was filed. (*See* ECF No. 32-1 at 4, 6, 13.) Still others are letters to prison officials. (*See id.* at 32–34.) None of these documents demonstrate that Cordova exhausted his administrative remedies.

4

In the 38 pages of exhibits, there is one document that *could* have exhausted Cordova's administrative remedies related to at least some of his claims. (ECF No. 32-1 at 17.) Exhibit 13A is an inmate complaint dated September 7, 2018, and concerns an incident that occurred on August 29, 2018. In this exhibit, Cordova discusses the back of cell policy but also writes about allegedly not receiving care from the Psychological Services Unit despite requests for it after being released from observation status. (*Id.*) However, there is no indication that the complaint was ever received. It is not stamped or dated received. Further, Cordova wrote a letter dated October 30, 2018, in which he asked the Inmate Complaint Examiner why he never got a response to his September 7, 2018 complaint. (*Id.* at 15.) The examiner stated that she had nothing for that date. (*Id.*) His inmate complaint history report also shows that the institution never received a complaint on or dated September 7, 2019 or a complaint about the lack of psychological care. (ECF No. 18-1.)

The Seventh Circuit Court of Appeals recently explained that inmates cannot "counter evidence that the prison did not receive his administrative appeal with a bald assertion of timely filing." *Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019). The court explained that Wisconsin's inmate complaint system uses a receipt system. *Id.* at 1026. In *Lockett*, the plaintiff did not receive a receipt within five days after filing his appeal to the Corrections Complaint Examiner. *Id.* Here, Cordova did not receive a receipt of his complaint within 10 days. *See* Wis. Admin. Code DOC § 310.10(4). The Seventh Circuit concluded that the failure to receive a receipt constitutes a "red flag," which requires an inmate to inquire why he had not received

5

"such an important document." *Id.* at 1027. Because Lockett failed to take any action when he did not receive a receipt, he failed to exhaust.

Cordova's failure to act on the "red flag" is even clearer. Lockett had to infer that something went awry because he did not receive a receipt. *See Lockett,* 937 F.3d at 1026–27. Cordova did not have to infer a "red flag." He was told explicitly that no one received his complaint. (ECF No. 32-1 at 15.) And yet he never took any corrective action; he never tried to exhaust these claims again. Therefore, Exhibit 13A did not exhaust any of his claims.

Nothing Cordova has submitted demonstrates that there is a genuine issue of material fact with respect to whether he exhausted his administrative remedies. Therefore, the defendants are entitled to summary judgment. The court grants their motion and dismisses the case without prejudice.

*4. Motion to Stay*

As part of their motion for summary judgment, the defendants also asked to stay discovery. The defendants filed their motion in lieu of an answer to the complaint, so the court never issued a scheduling order—and, therefore, never set a discovery deadline. There was no discovery to stay. Therefore, that portion of their motion is denied as moot.

*5. Conclusion*

**IT IS THEREFORE ORDERED** that the defendants' motion to stay the discovery deadline (ECF No. 15) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 15) is **GRANTED** based on Cordova's failure to exhaust the available administrative remedies before he filed his lawsuit.

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice**. The Clerk of Court is directed to enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 26th day of February, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge